UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JEFF TURNER AND TANYA TURNER, )<br>    )<br>    Plaintiffs, )<br>    )<br> v. )<br>    )<br> EXPERIAN INFORMATION )<br> SOLUTIONS INC., *et als.*, )<br>    )<br>    Defendants )  | No. 1:13-CV-00010-DBH |

**ORDER**

Plaintiffs Jeff and Tanya Turner bring this action against HSBC Mortgage Services Inc., Equifax Information Services LLC[1], and Experian Information Solutions Inc.  The Turners allege violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.  On June 21, 2013, HSBC filed a motion for summary judgment well ahead of the deadline set in the scheduling order. (Motion for Summary Judgment, ECF No. 52;  Scheduling Order, ECF Nos. 18, 58.)   In connection with its summary judgment motion, HSBC has filed a motion to seal portions of the summary judgment pleadings and the entirety of certain supporting documents.  (Motion to Seal, ECF No. 51.)  The Turners, for their part, have filed a motion for discovery pursuant to Rule 56(d) due to the timing of HSBC's summary judgment motion.  (Motion for Discovery and Stay, ECF Nos. 59, 60.)  The court referred for disposition the motion to seal and the motion for discovery and stay.[2]  The summary judgment motion is not ready for disposition because the

---

[1]   There is a stipulation of dismissal as to Equifax.  (ECF No. 63.)
[2]   In their motion for discovery, the Turners request as one alternative form of relief a stay of their deadline to oppose HSBC's summary motion until 14 days after the completion of discovery.  This order reinstitutes the scheduling order deadlines for completion of discovery, currently October 8, 2013.  (See ECF No. 58.)

Turners' deadline for opposing that motion has been stayed.  I now grant the motion to seal and the motion for discovery pursuant to Rule 56(d).

## BACKGROUND

### A.     *The Turners' amended complaint*

In their amended complaint, the Turners alleged that, in 2008, HSBC foreclosed on a mortgage it held on the Turner's former home.  In connection with the foreclosure, HSBC agreed to release the Turners from liability for any deficiency on the note secured by the mortgage. (Am. Compl. ¶ 13, ECF No. 39.)  In April 2011, the Turners sought financing to build a home on property they own.  Prospective lenders reported to the Turners that their credit reports indicated a past due balance of $43,469 owed to HSBC.  (Id. ¶¶ 15-17.)  Although HSBC agreed to release the Turners from liability on the note, HSBC erroneously continued to report an unpaid obligation on the note.  (Id. ¶¶ 14, 18.)  The Turners disputed the report with HSBC to no avail. (Id. ¶ 19.)  Eventually, on August 30, 2011, the Turners disputed the credit report entries under the Fair Credit Reporting Act.  (Id. ¶ 21.)  HSBC sent the Turners a letter dated September 15, 2011, in which HSBC acknowledged that the credit reports should read "completed foreclosure" with no balance due.  In the letter HSBC indicated that it requested that the credit bureaus update their reports.  (Id. ¶ 27.)  However, as of September 26, 2012, Mr. Turner's Experian and Equifax reports still showed the debt.  (Id. ¶¶ 30, 32.)  Mrs. Turner's Experian and Equifax reports showed the debt as late as August 20, 2012.  (Id. ¶¶ 29, 31.)  The Turners complain that they have been denied credit numerous times and they allege that the inaccurate reporting by HSBC is to blame and that lenders specifically pointed to the HSBC debt as a reason to deny credit.  (Id. ¶¶ 33-37.)

The Turners allege that HSBC "wrongly furnish[ed] inaccurate information" to the credit bureaus. (Id. ¶¶ 43, 47.) They allege that the defendants all willfully or negligently failed to comply with the requirements of the Fair Credit Reporting Act. (Id. ¶ 49.) The Turners' claim against HSBC is found in count three. They allege four violations under 15 U.S.C. § 1681s-2(b)(1), one violation under subsection (A), a second violation under subsection (B), a third violation under subsections (C) and (D), and a final violation under subsection (E). By subsection, these claims are based on:

> (A): failure "to fully and properly investigate" their disputes after receipt of notice;
>
> (B): failure "to review all relevant information provided by the consumer reporting agencies";
>
> (C) & (D): publication of the HSBC tradeline and failure "to accurately and completely report the results of a lawful investigation"; and
>
> (E): failure "to modify, delete and/or permanently block the reporting of inaccurate information."

(Am. Compl. ¶¶ 73-76.)

B.   *HSBC's summary judgment motion*

HSBC's summary judgment motion seeks to establish, as undisputed fact, that upon receipt of the notice of the Turners' dispute, it reviewed the relevant information, conducted an investigation, provided every credit reporting agency (CRA) with the correct information, and instructed the CRAs to modify what they were reporting. This communication was accomplished by HSBC through the e-OSCAR[3] credit reporting system. According to HSBC, these facts demonstrate that it fully satisfied its obligations under section 1681s-2(b)(1). (Mot. at 1-3 & n.2, ECF Nos. 51-1 (unredacted version), 52 (redacted version).) HSBC's supportive

---

[3]   The e-OSCAR acronym stands for electronic online solution for complete and accurate reporting.

factual presentation is found in a 43-paragraph statement of material facts. (ECF No. 51-2 (unredacted version), 53 (redacted version).)

C.  *The Turners' response / motion for discovery*

In opposition to HSBC's motion, the Turners have filed a "Rule 56(d) Statement," which has been construed as a motion for discovery pursuant to Rule 56(d). They report that HSBC has not been responsive to outstanding discovery initiatives and that HSBC's premature summary judgment motion has effectively stayed all discovery. In their motion, the Turners outline their theory of the case and the discovery they would like to have before being required to file a full-blown summary judgment response. (ECF No. 59.) The thrust of their motion is that HSBC has to demonstrate more than just an investigation and a response to the CRAs through the e-OSCAR system. They assert that "HSBC has to show that it permanently changed its records to avoid re-reporting the inaccurate information." (Pl.'s Rule 56(d) Statement at 2, ECF No. 59.) They indicate that they have good reason to believe that HSBC, despite responding in proper fashion through the e-OSCAR system concerning the merits of the Turners' dispute, nevertheless failed to delete or permanently block the debt from being re-reported. Consequently, they say, HSBC continued to report through one reporting channel that the Turners had a delinquent $43,000 debt, even though HSBC reported otherwise through the e-OSCAR system when presented with notice of their dispute. According to the Turners, "Now that the motion has been filed it is clear that there is one simple area of inquiry that must be explored, namely, what steps, if any, HSBC took to prevent future misreporting of the inaccurate balance after Plaintiffs' September 2011 dispute and whether those steps were successful." (Id. at 3.)

### D.     *HSBC's motion to seal and the Turners' response*

In conjunction with its motion for summary judgment, HSBC has filed a motion to seal so that it may redact from the public version of its motion papers all references to and discussion of its internal written procedures for responding to credit reporting disputes.  Although HSBC's redactions are made in a way that hides even the existence of internal procedures, the mere existence of such procedures is not deserving of a protective order.  I reference their existence here simply to avoid the additional burden of instructing HSBC to revise its public versions, particularly to unredact non-controversial statements indicating the mere existence of written procedures or that HSBC followed its own procedures, such as are found on pages 1, 2, 6, 8, and 11, and footnote 3, of its motion for summary judgment.  This somewhat hyperbolic approach to redaction is also evident in the redacted version of HSBC's statement of material fact.  Suffice it to say that, other than redacting the name of its written procedures and certain language found therein, in most instances HSBC has redacted statements to the rather trivial effect that steps it took in response to the Turners' dispute were taken pursuant to its written policies.  Beyond these redactions, HSBC has redacted the attached exhibits that contain its written policies (Def.'s Exs. E & F), as well as screenshots of its electronic systems "platform" (Def.'s Exs. H & I).  HSBC also has redacted references to these exhibits that are found in the authenticating declaration of Kimberley S. Roberts, one of HSBC's business information analysts (ECF No. 53-1 (redacted version).  Lastly, HSBC has redacted from the Roberts declaration statements to the effect that it has a policy of selecting a certain payment rating code when presented with certain options on the e-OSCAR system's drop down menu and that it also has a policy or practice related to reports involving joint borrowers.  (Roberts Declaration ¶¶ 14-15.)

The Turners have filed an opposition memorandum in response to the motion to seal. They primarily complain that HSBC seeks to file the affidavit of Attorney Smerage and its exhibits under seal. However, a review of the public version of the Smerage affidavit (ECF No. 53-19) reveals that the affidavit is not meant to be sealed. That is to say, the redactions found in the attached exhibits simply protect the Turners' social security numbers and mortgage account number. This is perfectly appropriate, as such redactions are required by local practice.

## DISCUSSION

I address first the motion to seal before addressing the more involved legal question associated with the Turners' request for leave to conduct discovery prior to responding to HSBC's summary judgment motion.

A.   *Motion to seal (ECF No. 51)*

HSBC's motion to seal is filed pursuant to Local Rule 7A and paragraph 7 of the parties' consent confidentiality order (ECF No. 30). The Turners have not suggested that HSBC's motion to seal imposes any obstacle on their ability to review the materials that HSBC wishes to withhold from its public filings. HSBC merely seeks a protective order under Rule 26 that will shield its written policies and related statements from public view. As grounds, HSBC maintains that the documents in question are proprietary business records. (Motion to Seal ¶ 3.) It fears disclosure to its competitors and the unfair advantage such disclosure would afford them. (Id. ¶ 4.) It alleges that this harm outweighs the marginal benefit the public would gain from having access to the documents in question. (Id.)

Because the scope of civil discovery is so broad, the Rules provide that a court may issue a protective order when the circumstances call for one. Pursuant to Rule 26(c), a court may issue a protective order, "for good cause, . . . to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  Among other possibilities, a court may limit the scope of disclosure or discovery, limit who may see the discovery materials, and require that material be filed under seal.  Fed. R. Civ. P. 26(c)(1)(A)-(H).  "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise.  The 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 402 (1st Cir. 2005) (quoting United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999)).  Relevant interests include the interest in confidentiality and privacy.  Id. (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984)).  Although there has never been a tradition of public access to pretrial discovery, see Seattle Times Co., 467 U.S. at 32-33, the public's right to access a document is elevated when a party seeks to introduce the document in court proceedings.  Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986).  Consequently, pretrial dispositive motions and the documents considered in connection with them are often viewed as having a different status than discovery documents. Id. at 11-13 (acknowledging that some courts have recognized a public right of access to summary judgment motions).  The First Circuit has indicated that "only the most compelling reasons" can override the public's right of access to judicial records.  In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005) (quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987)).  The courts "must carefully balance the competing interests that are at stake in the particular case." Siedle v. Putnam Invs., 147 F.3d 7, 10 (1st Cir. 1998).

     I conclude that HSBC's interest in protecting its written credit reporting procedures from public dissemination outweighs the public's presumptive right to access these documents in the context of this particular dispute, at this particular time.  At present, this case does not raise a

significant controversy related to the contents of HSBC's written procedures. Indeed, it is not entirely clear why HSBC felt the need to file its procedures as exhibits in this case as the legal arguments it raises in its summary judgment motion do not hinge on the existence of the written procedures or the particular language found therein. At most, the procedures simply suggest that HSBC has developed procedures to help its employees comply with HSBC's credit reporting obligations.[4] What matters at present is what HSBC did or did not do in connection with its credit reporting concerning the Turners, not the fact that it followed its internal policies or procedures. Given this particular presentation, HSBC's motion is granted. The issue of maintaining sealed status for the exhibits in question may be revisited if it comes to pass that the contents of the procedures are deemed germane to legal issues raised in the litigation. That will likely depend on the nature of the Turners' presentation and whether it relies on alleged errors or omissions in the procedures. At present, the Turners have not raised such an argument.

### B.   *The motion for discovery (ECF No. 60)*

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure[5], the court may, among other things, defer consideration of a motion for summary judgment to allow the nonmovant time to take discovery, if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). This rule "describes a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." Resolution Trust Corp. v. N. Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994). "[D]istrict courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." Id. A Rule

---

[4]   HSBC has a legal obligation to develop such procedures. See 15 U.S.C. § 1681s-2(e)(1)(B).
[5]   Formerly Rule 56(f).

56(d) movant must proffer the following: (1) "good cause for the failure to have discovered the facts sooner"; (2) "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist"; and (3) "how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Id.; see also Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir. 2007).

The thrust of HSBC's motion is that it fully satisfied its section 1681s-2(b)(1) duties by correctly notifying credit reporting agencies, through the e-OSCAR system, that the Turners' HSBC mortgage tradeline needed to be modified to indicate, among other things, that the current balance and amount past due fields should both read "0." (Motion for Summary Judgment at 7-8.) The thrust of the Turners' motion for discovery is that they believe that HSBC separately continued to misreport a $43,000 outstanding obligation through other credit reporting channels.[6] They maintain that they have a good-faith basis to think this because "the information known at this time shows that Experian reports for both Plaintiffs after September 2011 and through 2012 included a $43,000 balance associated with the HSBC account and say that HSBC reported the balance as of November 2011." (Mot. for Discovery at 6 (citing copies of the Turners' credit reports from August and September 2012, ECF No. 59-2, Exs. B & C, and Experian's eleventh interrogatory response, ECF No. 59-2, Ex. D, PageID #909).) The Turners say that such reporting ran afoul of section 1681s-2(b)(1)(E), which requires that furnishers promptly take

---

[6] According to the Turners:
> Typically furnishers use two separate systems for handling disputes and for regular reporting of credit information to the credit reporting agencies. See generally National Consumer Law Center, Fair Credit Reporting (7th Ed. 2010), Chapter 6. The e-OSCAR system that HSBC references repeatedly in its motion is the electronic system for responding to disputes. But a different system, the Metro 2 Format, is used for reporting credit information on a regular basis. If the furnisher's internal records which populate the Metro 2 Format are not changed, a correction made using an e-OSCAR form will be superseded by later resubmission of the original inaccurate information.

(Motion for Discovery at 5, n.4.)

9

steps to "permanently block the reporting" of inaccurate information discovered during an investigation of a consumer dispute.  (Id. at 4.)

The Turners' Rule 56(d) presentation provides a plausible basis for believing that they will discover facts sufficient to overcome HSBC's summary judgment motion.  Assuming that summary judgment is overcome, full discovery is likely to enhance the Turners' evidentiary presentation at trial.  Their approach to discovery has been diligent to date and they have in no respect slept on their rights.  They also have good cause for not possessing detailed evidence about HSBC's post-September 2011 reporting activity or its efforts to block such reporting.  That information is in HSBC's possession and HSBC has, to date, resisted discovery initiatives targeted at the information on the ground that such evidence is immaterial to the Turners' suit.  Contrary to HSBC's position, as explained below, the Turners have shown that the evidence they seek is material to their claim against HSBC.

The Fair Credit Reporting Act, or FCRA, is meant "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. v. Burr, 551 U.S. 47, 52 (2007).  Section 1681s-2 of the FCRA imposes specific obligations on "furnishers of information to credit reporting agencies."  15 U.S.C. § 1681s-2.  Among these obligations is a prohibition against reporting information known to be false.  Id. § 1681s-2(a)(1)(A), (B).  The FRCA also imposes an obligation on those who regularly furnish information to correct and update information erroneously furnished to the agencies in the past, including the obligation to "not thereafter furnish to the agency any of the information that remains not complete or accurate."  Id. § 1681s-2(a)(2)(A), (B).

In the event the furnisher receives notice of a dispute concerning reported information, the furnisher is subject to additional duties.  These require the furnisher to:

      (A) conduct an investigation with respect to the disputed information;

      (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];

      (C) report the results of the investigation to the consumer reporting agency;

      (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

      (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
           (i) modify that item of information;
           (ii) delete that item of information; or
           (iii) permanently block the reporting of that item of information.

Id. § 1681s-2(b)(1).

      The FRCA provides a private cause of action against a furnisher that "is negligent in failing to comply with any requirement" of the Act. Id. § 1681o. Proof of "willful noncompliance" provides the private litigant with additional remedies. Id. § 1681n. However, there is a limitation on liability that withholds from private litigants the right to base a cause of action on violations of subsection (a) of section 1681s-2. Id. § 1681s-2(c). Thus, for example, a consumer may not bring an action against a furnisher based on the furnisher's initial provision of inaccurate information, but may only bring suit for violation of section 1681s-2(b), after giving the furnisher proper notice of a dispute and an opportunity to comply with subsection (b). Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 36 (1st Cir. 2010); Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615-16 (6th Cir. 2012).

      As indicated in the foregoing statutory excerpt, among the furnisher's duties under section 1681s-2(b), upon discovering inaccurate reporting of an item of information, is the duty

to promptly "modify," "delete," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1)(E)(iii).  According to HSBC, its use of the e-OSCAR system to respond to the agencies' notices of dispute fully satisfied subsection (E) as a matter of law. (Mot. for Summary J. at 13-14.)  For this proposition HSBC cites Stroud v. Bank of America, 886 F. Supp. 2d 1308 (S.D. Fla. 2012).  (Mot. at 14.)  Stroud involved, however, only a claim of inadequate investigation.  866 F. Supp. 2d at 1312.  In that context, the court said, among other things, that it was not unreasonable for Bank of America to rely, in connection with its investigation, on a transmission *from* a credit reporting agency made through the e-OSCAR system.  Id. at 1316.  Stroud does not support the proposition that a furnisher satisfies all of its statutory obligations by sending a consumer-favorable report *to* the credit reporting agencies through the e-OSCAR system.  In fact, Stroud states that one way a consumer can support a claim is by proving a furnisher failed to modify, delete, or permanently block the reporting of an item of information after finding the information to be inaccurate.  Id. at 1313.  This is in harmony with the language of subsection (b)(1)(E) of section 1681s-2.

HSBC disagrees with this view and puts forward the supposition that the disputed tradeline may have persisted on the Turners' credit report even after HSBC instructed the agencies to modify the tradeline simply because one or more of the credit reporting agencies neglected to update its records.  (Mot. at 16.)  That may prove to be the case, but it is too early to say for sure without affording the Turners the opportunity to conduct discovery into the matter. Alternatively, HSBC argues that there can be no claim against it even if it negligently re-reported the inaccurate information to the credit reporting agencies.  (Id. at 15 n.13.)  Supposing HSBC did err and re-report the mistaken information, HSBC argues that such an error would require the Turners to commence a new round of dispute resolution before bringing suit.  Otherwise, says

HSBC, the Turners would "bootstrap" a claim for violation of section 1681s-2(a), which is not allowed by the limitation on liability. (Id. (citing unpublished district court decisions that do not bear the weight of the assertion).)  I do not agree with this interpretation of the FCRA.  Such a reading would effectively nullify the protections extended under section 1681s-2(b)(1)(E).  Rather, I read the language of subsection (b)(1)(E) prospectively.  The provision requires a furnisher, "as appropriate," to "promptly (i) modify . . ., (ii) delete . . ., or (iii) permanently block the reporting of that item of information."  This language is plainly meant to impose an obligation on furnishers to refrain from re-reporting information, already the subject of a proper consumer dispute, which the furnisher has determined is inaccurate, incomplete, or unverifiable.  See Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1108 (9th Cir. 2012) (reversing summary judgment award to furnisher, Chase Bank) ("The most thorough investigation means nothing, however, if the results of the investigation are not put to good use.  Subparagraphs (D) and (E) of § 1681s-2(b)(1) required Chase to rectify past misreporting and prevent future misreporting of information that is 'incomplete' and 'inaccurate.'");  Wang v. Asset Acceptance LLC, No. 3:2009-cv-04797, 2010 U.S. Dist. Lexis 91946, *20, 2010 WL 2985503, *7 (N.D. Cal. July 27, 2010) (unpublished order denying motion to dismiss) ("While the duties imposed by § 1681s-2(b) are not triggered until notice is provided pursuant to § 1681i, there is no indication that Congress intended a consumer . . . to continually *redispute* the inaccurate or incomplete reporting of the same debt in order to ensure an accurate credit report.") (emphasis in original).  Consequently, if the disputed HSBC tradeline persisted on the Turners' credit reports even after HSBC responded to the notice of their dispute using the e-OSCAR system, and if the tradeline persisted because of new reporting activity by HSBC, then such re-reporting would reflect a

13

failure on HSBC's part to modify, delete, or permanently block the reporting of that item of information.

## CONCLUSION

HSBC's motion to seal (ECF No. 51) is granted. The Turners' motion for discovery (ECF No. 60) is granted. Discovery in conformance with the scheduling order (ECF No. 18) should recommence promptly. The scheduling order permits each side to pursue depositions, among other discovery initiatives, and the discovery alternatives proposed by the Turners on page 8 of their motion for discovery fall within the scheduling order's parameters. The discovery deadline of October 8, 2013, and all subsequent deadlines are no longer stayed as to any party and the deadlines established on July 2, 2013, are re-established. The response to the currently pending summary judgment motion will be due twenty-one (21) days following the close of discovery, unless a subsequent notice of intent is filed and the pending motion is withdrawn.

## CERTIFICATE

Any objections to this report shall be filed in accordance with Federal Rule of Civil Procedure 72.

*So Ordered.*
August 5, 2013            /s/ Margaret J. Kravchuk
                          U.S. Magistrate Judge